## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| DONNA J. CONKLIN, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | 09-1450-NLH |
| | : | |
| v. | : | |
| | : | **OPINION** |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

---

**APPEARANCES**:

Robert A. Petruzzelli, Esquire
JACOBS, SCHWALBE & PETRUZZELLI, P.C.
Woodcrest Pavilion
Ten Melrose Avenue - Suite 340
Cherry Hill, NJ 08003

    *Attorneys for Plaintiff*

Ralph J. Marra, Jr. Esquire
Acting United States Attorney
    By:  Sheena V. Barr, Esquire
         Special Assistant U.S. Attorney
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004

    *Attorneys for Defendant*

**HILLMAN, District Judge**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of Plaintiff, Donna J. Conklin, for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §
401, et seq. and Social Security Income ("SSI") under Title XVI
of the Social Security Act, 42 U.S.C. § 1381, et seq.  The issue
before the Court is whether the Administrative Law Judge ("ALJ")
erred in finding that Plaintiff's residual functional capacity
("RFC") allowed her to perform work which exists in the national
economy.  For the reasons stated below, this Court will affirm
the ALJ's decision.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

      Plaintiff, a forty-eight year old woman, had been employed
off and on in various occupations, including store laborer,
caterer, helper, deli cutter/slicer, kitchen helper, warehouse
worker, vendor, hand packager, palletizer, informal waiter, and
fast food worker, until on or around July 26, 2005.  (R. at 25,
26.)  On May 26, 2006, Plaintiff protectively filed an
application for DIB and SSI, alleging an inability to work since
July 26, 2005 due to a possibly ruptured herniated disc or
pinched nerve in the neck.  (Id. at 14, 59-61, 77.)  This
application was denied initially and on reconsideration. (Id. at
31-36, 38-40.)

      On September 5, 2008, Plaintiff filed a Request for a
Hearing before an ALJ.  (Id. at 41.)  A hearing was held on
August 7, 2008 before ALJ Christopher K. Bullard.  (Id. at 334-
369.)  On September 11, 2008, ALJ Bullard issued his decision

2

denying Plaintiff's application for DIB and SSI.  (Id. at 14-26.)
As a preliminary matter, ALJ Bullard found that Plaintiff met the
non-disability requirements for DIB set forth in Section 216(I)
of the Social Security Act and was insured for benefits through
the date of this decision.  (Id. at 25.)  Then, performing the
five step evaluation pursuant to 20 C.F.R. §§ 404.1520 and
416.920, ALJ Bullard found first that Plaintiff had not engaged
in substantial gainful activity since July 26, 2005, the alleged
date of disability onset.  (Id.)  With respect to step two, the
ALJ found that Plaintiff suffered from post traumatic cervical
sprain, cervical radiculopathy with herniated disc, cervical
spondylosis, and status post cervical fusion that was "severe."
(Id.)  At step three, however, the ALJ found that Plaintiff's
medical conditions, although severe, did not meet the
requirements of any impairments on the Listing.  (Id.)  At step
four, the ALJ then found that Plaintiff's impairment prevented
her from returning to her past relevant work.  (Id. at 26.)  At
step five, the ALJ then found that Plaintiff retained the RFC to
perform a significant number of jobs in the national economy,
including work as an office helper, information clerk, and
routing clerk, and was therefore "not disabled."  (Id.)  Finally,
the ALJ concluded that Plaintiff was not under a "disability," as
defined in the Act, at any time through the date of the decision.
(Id.)  Thus, the ALJ held that Plaintiff was not entitled to DIB

and was ineligible for SSI.  (Id.)

　　With respect to Plaintiff's RFC, the ALJ found that she
retained the ability to perform the exertional demands of light
work, or work which requires maximum lifting of twenty pounds and
frequent lifting of ten pounds.  (Id. at 25.)  The ALJ also found
that Plaintiff was additionally limited in that she was able to
lift/carry ten pounds frequently and twenty pounds occasionally,
can sit for six hours in an eight hour workday and one hour
continuously, can stand for four hours in and eight hour workday
and thirty minutes continuously, can walk for two hours in an
eight hour workday and twenty minutes continuously, and can
frequently use her left (non-dominant) arm and hand to
handle/feel and reach horizontally and vertically.  (Id.)  The
ALJ further found that Plaintiff was a "younger individual" with
a semi-skilled work history, but with no transferable skills and
"limited" education.  (Id. at 26.)

　　Plaintiff filed a Request for Review by the Appeals Council
on October 28, 2008.  (Id. at 9.)  That request was denied by the
Appeals Council on February 5, 2009.  (Id. at 3-6.)  Thereafter,
on March 31, 2009, Plaintiff filed the instant action.

## II.  DISCUSSION

### A.    Standard of Review

　　Under 42 U.S.C. § 405(g), Congress provided for judicial
review of the Commissioner's decision to deny a complainant's

application for DIB and SSI.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  Ogden

v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).   The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."   Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).   Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.   Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).   Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).   In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.   Moreover, apart from the substantial evidence inquiry, a

6

reviewing court is entitled to satisfy itself that the
Commissioner arrived at his decision by application of the proper
legal standards.  <u>Sykes</u>, 228 F.3d at 262; <u>Friedberg v. Schweiker</u>,
721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp.
791, 793 (D.N.J. 1981).

      **B.**    **Standard for DIB and SSI**

     The Social Security Act defines "disability" for purposes of
an entitlement to a period of disability and DIB or SSI as the
inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected to result in death, or which has
lasted or can be expected to last for a continuous period of not
less than 12 months."  <u>See</u> 42 U.S.C. §§ 423(d)(1)(A) and
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if her physical or mental impairments are of such
severity that she is not only unable to perform her past relevant
work, but cannot, given her age, education, and work experience,
engage in any other type of substantial gainful work which exists
in the national economy, regardless of whether such work exists
in the immediate area in which she lives, or whether a specific
job vacancy exists for her, or whether she would be hired if she
applied for work.  42 U.S.C. §§ 423(d)(1)(B) and 1382c(a)(3)(B).

     The Commissioner has promulgated regulations for determining
disability that require application of a five-step sequential

analysis.  See 20 C.F.R. §§ 404.1520 and 416.920.  This five-step
process is summarized as follows:

1.  If the claimant currently is engaged in substantial
    gainful employment, he will be found "not disabled."

2.  If the claimant does not suffer from a "severe
    impairment," he will be found "not disabled."

3.  If the severe impairment meets or equals a listed
    impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1
    and has lasted or is expected to last for a continuous
    period of at least twelve months, the claimant will be
    found "disabled."

4.  If the claimant can still perform work he has done in
    the past ("past relevant work") despite the severe
    impairment, he will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's
    ability to perform work ("residual functional
    capacity"), age, education, and past work experience to
    determine whether or not he is capable of performing
    other work which exists in the national economy.  If he
    is incapable, he will be found "disabled."  If he is
    capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f) and 416.920(b)-(f).  Entitlement to
benefits is therefore dependent upon a finding that the claimant
is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.
See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150,
1153 (3d Cir. 1983).  In the first four steps of the analysis,
the burden is on the claimant to prove every element of his claim
by a preponderance of the evidence.  See Poulos v. Commissioner
of Social Security, 474 F.3d 88, 92 (3d Cir. 2007); Wallace, 722
F.2d at 1153.  In the final step, the Commissioner bears the

8

burden of proving that work is available for the plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

Plaintiff argues that the ALJ's decision should be reversed because: (1) the ALJ improperly discounted Plaintiff's testimony of disabling pain and limitations; (2) the ALJ failed to properly determine Plaintiff's RFC; and (3) the ALJ improperly relied on the vocation expert's response to a flawed hypothetical question. Further, Plaintiff argues that the administrative record provides sufficient basis for an award of summary judgment in her favor. Each of these arguments will be addressed in turn.

1.   Whether The ALJ Improperly Discounted Plaintiff's Testimony of Disabling Pain and Limitations.

Plaintiff asserts that the ALJ improperly disregarded Plaintiff's complaints of disabling pain and limitations as not entirely credible in violation of Social Security Ruling ("SSR") 96-7p.  SSR 96-7p provides in relevant part that "the adjudicator must determine the credibility of the individual's statements based on the entire case record," that "[t]he decision must contain specific reasons for the credibility finding, supported by evidence in the case record and must specifically state the

9

weight given to the individual's statements."  The Court finds that the ALJ decision was made in accordance with SSR 96-7p.  The ALJ appropriately based his credibility determination upon the entire case record, and his decision contained specific reasons, which were supported by evidence, for his determination.

In his Decision, the ALJ found that "the medical record does not support that the claimant's impairments are as severe as she contends."  (R. at 18.)  Specifically, the ALJ noted, "[v]arious medical experts have made statements illustrating that the impairments are not as debilitating as suggested by the claimant."  (Id.)  The ALJ then carefully and thoroughly discussed Plaintiff's medical history.  The ALJ detailed Plaintiff's treatment by Dr. Jay S. Rosen, who examined her on September 15, 2005 and noted that he did not see any objective signs of impairment.  (Id.)  The ALJ also described Plaintiff's treatment by Dr. Sandra LaRocca in October, 2005, who commented that Plaintiff's physical examination revealed many positive findings, as she had full strength throughout the bilateral upper and lower extremities and her left upper extremity pain had improved with medication.  (Id. at 19.)  He also noted the State Agency medical consultant's findings on September 26, 2006 that Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally, could stand, sit, or walk for about six hours out of eight during a workday, and had unlimited push/pull

10

abilities.  (Id.)  Further, the ALJ detailed Dr. Richard C.
Strauss's finding on November 2, 2006 that Plaintiff was doing
reasonably well following her surgery and that her preoperative
arm pain had greatly improved.  (Id.)  Dr. Strauss also observed
that Plaintiff appeared quite comfortable, had no difficulty
rising from a seated position, moving about the office, or
ascending the examining table, and that she was fully ambulatory,
as well as rated her strength in both upper extremities as
"excellent" with no weakness or sensory loss present.  (Id.)  On
April 12, 2007, Dr. Strauss opined that Plaintiff should not be
asked to list, carry, push/pull objects weighing greater than
thirty-five pounds.  (Id. at 20.)  The ALJ also noted that a
"Kinematic Functional Capacity Evaluation and Work Ability
Assessment," dated June 4, 2007, seven months after Plaintiff's
surgery, concluded that she had the ability to perform light
work.  (Id.)

     Having reviewed Plaintiff's medical history, the ALJ
concluded that "[t]he claimant has an impairment that is
reasonably expected to produce the type of symptoms she alleges,
but her complaints suggest a greater severity of impairment than
can be shown by objective medical evidence alone."  (Id.)  The
ALJ further found that "the record contains several
inconsistencies which adversely affects [Plaintiff's]
credibility."  (Id.)  These included statements in a medical

record by Dr. Marshall Pressman on October 6, 2005 that Plaintiff stopped working because she was laid off and not because of her disabling condition.  (Id. at 21.)  The ALJ also noted conflicting testimony from Plaintiff at various times as to her ability to perform household chores, ability to stand, and problems with personal care and daily activities.  (Id.) Plaintiff's self-assessments, the ALJ noted, were "indicative of a fairly active lifestyle," and "belie[d] her allegation of disability."  (Id.)  The ALJ also considered the functional effects of pain on Plaintiffs limitations, noting a "Pain Report - Adult" questionnaire from July 26, 2006 and numerous statements from Dr. Strauss, which found Plaintiffs pain to be less severe that alleged.  (Id.)  Based upon this, the ALJ concluded that "claimant's subjective complaints of pain and discomfort and resulting limitations are not credible to the extent alleged." (Id.)  Rather, the ALJ found Plaintiff's "assertions concerning the severity of her impairments, and their impact on her ability to work, are only credible to the extent that they support a finding of being able to perform light work with the cited preclusions."  (Id. at 22.)

Plaintiff argues that her activities of daily living cannot be used to attack her credibility.  However, this is not an accurate statement of the law.  20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) specifically provide that a claimant's daily

12

activities are a relevant factor for consideration when her complaints of pain suggest a greater severity than can be shown by objective medical evidence alone.  SSR96-7p also specifically provides that "the adjudicator must consider the individual's daily activities" in evaluating symptoms such as pain.

Although Plaintiff cited to various authority is support of her argument, all are ultimately unavailing.  First, Plaintiff cites 20 C.F.R. § 404.1572(c) for the proposition that evidence of daily activities cannot be used to attack credibility. However, this regulation does not apply in this situation. Rather, it simply provides that daily activities are not considered "substantial gainful activity."  The ALJ's reference to Plaintiff's daily activities was not to determine her ability to perform substantial gainful activity, but rather to assess her credibility in light of the disparity between her allegations of pain and the findings in the objective medical evidence.

Second, Plaintiff's reliance on Fargnoli v. Massanari, 247 F.3d 34, 40 n.5 (3d Cir. 2001), which noted that "sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity," is likewise misplaced.  The ALJ's reference to Plaintiff's daily activities was not to determine her ability to perform substantial gainful activity. Moreover, the evidence relied upon by the ALJ in determining Plaintiff's credibility was not sporadic or transitory.

13

Finally, the remaining cases cited by Plaintiff, <u>Schwartz v. Halter</u>, 134 F. Supp. 2d 640, 654 n.13 (E.D. Pa. 2001) and <u>Rieder v. Apfel</u>, 115 F. Supp. 2d 496, 504-05 (M.D. Pa. 2000), are both distinguishable.  In <u>Schwartz</u>, the Court found the plaintiff's everyday activities to be consistent with the limited abilities alleged by the plaintiff and his treating physicians.  134 F. Supp. 2d at 654 n.13.  Here, by contrast, the ALJ found Plaintiff's daily activities to be consistent with the limits on her ability found by her treating physicians, but not with Plaintiff's own allegations regarding her limits.  Further, the ALJ in <u>Rieder</u> used evidence of the plaintiff's daily activities to question her doctors' determination that she was disabled, 115 F. Supp. 2d at 504, whereas the ALJ here only used such evidence to evaluate Plaintiff's credibility.

Plaintiff also argues that the ALJ improperly cited to her earnings record in assessing her credibility.  There is no dispute that the ALJ's assertion that Plaintiff's earnings record indicated that she last worked in 2007 is inaccurate.  In fact, Plaintiff has not worked since 2005.  Nonetheless, this error does not appear to have weighed significantly on the ALJ's determination.  Even prior to addressing that issue, the ALJ had concluded that "[t]he totality of the evidence of record, particularly the findings of treating physicians as cited, rebuts the claimant's contention that she is disabled to the degree

14

alleged."  (R. at 21.)

Plaintiff also asserts that the ALJ failed to consider the effects of Plaintiff's medication.  While the ALJ's does not expand upon the effects of Plaintiff's medication, he does note in his Decision that "her medications cause side-effects, as they make her drowsy and nauseous."  The Court is satisfied that the ALJ sufficiently considered the effect of Plaintiff's medication is rendering his decision.

The Court is not "empowered to weigh the evidence or substitute its conclusions for those of the [ALJ]."  Williams, 970 F.2d at 1182.  Therefore, the Court is precluded from independently determining whether Plaintiff's allegations regarding her pain are credible.  Instead, the ALJ's decision can only be overturned if it is found that the ALJ was unreasonable in his review of Plaintiff's professed inconsistent evidence, or overlooked that evidence.  Here, the ALJ considered all the evidence presented to him and was reasonable in his consideration thereof.  In his recitation of the medical evidence, the ALJ documented both Plaintiff's abilities and inabilities as reported by her and her doctors.

Ultimately, the ALJ found that Plaintiff's "assertions concerning the severity of her impairments, and their impact on her ability to work, are only credible to the extent that they

15

support a finding of being able to perform light work with the cited preclusions." (Id. at 22.)  Simply disagreeing with the ALJ's assessment is not sufficient to establish that his decision was not supported by substantial evidence.  Perkins v. Barnhart, 79 Fed. Appx. 512, 515 (3d Cir. 2003).  The ALJ's conclusion was reasonable and supported by substantial evidence.

      2.   <u>Whether The ALJ Properly Determined Plaintiff's RFC</u>

Plaintiff argues that the ALJ failed to perform a function-by-function assessment of her abilities, as required by SSA regulations and rulings.  See 20 C.F.R. §§ 404.1545 and 416.945. However, the ALJ did perform such an analysis and detailed his determinations in his Decision.  Specifically, as set forth above, the ALJ found that Plaintiff "retains the residual functional capacity to perform the exertional demands of light work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten pounds." (R. at 18.)  The ALJ further found that Plaintiff was additionally limited in that she was "able to lift/carry ten pounds frequently and twenty pounds occasionally, can sit for six hours in an eight hour workday and one hour continuously, can stand for four hours in and eight hour workday and thirty minutes continuously, can walk for two hours in an eight hour workday and twenty minutes continuously, and can

frequently use her left (non-dominant) arm and hand to handle/feel and reach vertically and horizontally." (Id.)  This conclusion was based upon Plaintiff's testimony, as well as the medical opinions of her treating sources, a "Kinematic Functional Capacity Evaluation and Work Ability Assessment," dated June 4, 2007, and the assessment of the State Agency medical consultant. (Id.)

The ALJ addressed both Plaintiff's physical and mental abilities.  (Id. at 17-18.)  Indeed, his Decision discusses all of the physical and mental issues identified for consideration by 20 C.F.R. §§ 404.1545(b), (c) and 416.945(b), (c), including sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, crouching, responding appropriately to supervision, and work pressure.  (R. at 17-19.)  Plaintiff asserts that the ALJ failed to consider the effect of her headaches in making his determination.  However, the ALJ specifically detailed Plaintiff's testimony that she experiences "daily headaches," and how she lies with her head back on a rolled up towel to stop the headaches.  (Id. at 17.)  Thus, the Court finds that the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

3.   Whether The ALJ Improperly Relied on the Vocational Expert's Answers to a Flawed Hypothetical Question.

Plaintiff takes issue with the ALJ's conclusions at step five of the analysis in several ways.  First, Plaintiff argues that the hypothetical presented to the vocational expert by the ALJ at the hearing was flawed and, accordingly, his reliance upon the vocational expert's response in finding that other occupations existed in the national economy that Plaintiff was capable of performing was improper.  The hypothetical was premised on Plaintiff's RFC, and included lifting restrictions of 20 pounds occasionally and 10 pounds frequently.  This was improper, Plaintiff asserts, because the Kinematic Functional Capacity Evaluation and Work Ability Assessment, dated June 4, 2007, restricts Plaintiff's carrying to 10 pounds occasionally and 5 pounds frequently.

The Courts is satisfied that the ALJ's hypothetical was supported by substantial evidence.  Although the Kinematic Functional Capacity Evaluation and Work Ability Assessment, dated June 4, 2007, does indicate that Plaintiff's carrying is limited to 10 pounds occasionally and 5 pounds frequently, it specifically provides in the "additional comments" section, "the Examinee demonstrates ability for Light category work (occasional lift and work up to 20 lbs.)."  (R. at 288-89.)  Further, the

18

Physical Capacity Assessment, dated September 26, 2006, provides that Plaintiff's lifting restrictions were 20 pounds occasionally and 10 pounds.  (Id. at 262.)  As noted above, the Court is not "empowered to weigh the evidence or substitute its conclusions for those of the [ALJ]."  Williams, 970 F.2d at 1182.  The ALJ's decision can only be overturned if it is found that the ALJ was unreasonable in his review of Plaintiff's professed inconsistent evidence, or overlooked that evidence.  Such is not the case here.  The ALJ considered all the evidence presented to him and his conclusion was reasonable and supported by substantial evidence.

Second, Plaintiff argues that the ALJ's failure to discuss an alternate hypothetical put to the vocational expert in his decision is grounds for reversal.  The alternate hypothetical put to the vocational expert by counsel for Plaintiff increased the limitations so that the individual was unable to perform task of a prolonged or repetitive nature for more than twenty minutes. (Id. at 367.)  In response to this hypothetical, the vocational expert testified that there would be no light range occupations that could be done with the additional limitation unless the repetitive activity could be broken up.  (Id.)  This hypothetical was based on the recommendation of the Kinematic Functional Capacity Evaluation and Work Ability Assessment, dated June 4,

2007, that Plaintiff be "allowed changes in activities during periods of prolonged or repetitive upper extremity activities . . . [greater than] 20 minutes."  (<u>Id.</u> at 289.)  The ALJ stated in his Decision that since the alternate hypotheticals "fall outside of the claimant's [RFC] as determined above, the specific presentation need not be referred to in the body of this decision."  (<u>Id.</u> at 25.)

In making its determination of whether a claimant can perform work available in the national economy at step five, an ALJ must consider "the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience."  20 C.F.R. § 404.1520(f) and 416.920(f).  As discussed above, the ALJ's determination of Plaintiff's RFC is supported substantial evidence in the record.  Plaintiff's RFC, along with her age, education, and past work experience, were submitted hypothetically to the vocational expert by the ALJ.  Accordingly, the ALJ's reliance upon the vocational expert's response to the hypothetical was appropriate.  The ALJ was not required to rely upon the answers to any supplemental hypotheticals submitted by the parties.  Nor was the ALJ required to explain his decision not to rely upon the supplemental hypothetical and additional limitation it assumed, having already thoroughly explained his determination of Plaintiff's RFC.  <u>See</u>

<u>Hur v. Barnhart</u>, 94 Fed. Appx. 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").

Finally, Plaintiff argues that the Physical Capacity Assessment, dated September 26, 2006, completed by the State Agency should be completely ignored, because "a Plaintiff who possessed the capabilities found by the State Agency consultant would not have required the surgery that was performed such a short time after the assessment was made." (Plaintiff's Brief at 24.)  Further, Plaintiff argues, this report is a "check a box" form of suspect reliability.  The Court, however, finds the ALJ's consideration of this report along with the other evidence upon which he based his conclusions to be appropriate.  The Physical Capacity Assessment was simply one of the many pieces of evidence, including the testimony of Plaintiff and her treating physicians and the Kinematic report, on which the ALJ based his decision.  There is substantial evidence in the record to support all of the ALJ's determinations in this case.

## III. CONCLUSION

For the reasons stated above, the Commissioner's finding that Plaintiff is not disabled will be affirmed.  An appropriate Order will be entered.


Date:  June 30, 2010            s/ Noel L. Hillman
                                HON. NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey